IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

PATRICIA SCHRADER-COOKE, )
)
Plaintiff, )
)
v. )
)
THE GOVERNMENT OF THE VIRGIN )
ISLANDS, BOARD OF EDUCATION, MARY )
MOORHEAD, JUDY GOMEZ, WINONA )
HENDRICKS, LA VERNE SLACK and ARAH )
LOCKHART, individually and in their capacity )
as Board members )
Defendants. )

**CIVIL CASE NO.: SX-16-CV-655**

ACTION FOR DAMAGES

**2019 VI Super 167**

**MEMORANDUM OPINION**

¶ 1    At hearing on November 5, 2019, for reasons set out on the record, the Court granted Defendant Government of the Virgin Islands, Board of Education, Judy Gomez, Winona Hendricks, La Verne Slack and Arah Lockhart's (Government Defendants') fully briefed Motion for Summary Judgment (Motion), opposed by Plaintiff Patricia Schrader-Cooke. The Court denied Defendant Mary Moorhead's fully briefed Motion to Dismiss (Moorhead Motion), opposed by Plaintiff, treated as a motion for summary judgment pursuant to V.I. R. Civ. P. 56(h), presenting matters outside the pleadings. The bases for those rulings are set out more fully herein.

BACKGROUND

¶ 2    On June 25, 2015, Defendant Board of Education (BOE), through then-Board Chair/President Nandi Sekou, Esq., notified the Office of Management and Budget (OMB) that effective June 22, 2015 Schrader-Cooke had been offered and accepted the position of Associate Executive Director at a salary of $80,000 per annum. In the same letter, BOE advised OMB that Schrader-Cooke would serve as Acting Executive Director at a salary of $89,250 to replace the Executive Director who was on extended sick leave. Motion, ex. 1. The duties of Associate Executive Director included supporting and implementing projects assigned by Board members and the Executive Director. Motion, ex. 2. On June 22, 2015, Schrader-Cooke executed her Voluntary Acceptance of Exempt (Unclassified) Position "electing to be placed in EXEMPT SERVICE of the Government of the Virgin Islands." Motion, ex. 3. On August 3, 2015, a

Notification of Personnel Action (NOPA) was finalized memorializing Schrader-Cooke as a new hire in the unclassified position of Associate Executive Director. Motion, ex. 4.

¶ 3      Five months later, by letter of February 5, 2016, BOE, through new Chair Defendant Moorhead, suspended Plaintiff for seven days for her unauthorized approval of a NOPA to reclassify a fellow BOE employee from exempt service to classified service, failing to inform and obtain prior BOE approval. BOE considered Plaintiff's actions a breach of the "Board's confidence… to execute your tasks with honesty and worthy of the trust required for your office." Motion, ex. 5. The letter advised Schrader-Cooke that "[s]ince you are exempt, you require no notice regarding an appeal of this decision. Out of an abundance of caution, however, you are hereby notified that you have a right to request a hearing before the Public Employees Relations Board (PERB) within ten (10) days of your suspension as required by Virgin Islands Code, Title 3, § 530." The letter quoted in full 3 V.I.C. § 530(a)(1) setting forth those appeal rights. Motion, ex. 5. The suspension was affirmed by majority vote of the Board at a meeting held February 12, 2016, where Schrader-Cooke was afforded the opportunity to be heard, and to be represented by counsel who advocated to the Board on her behalf.

¶ 4      On February 12, 2016, Schrader-Cooke appealed her suspension to PERB pursuant to 3 V.I.C. § 530(a)(1). On March 21, 2016, after hearing conducted March 9, 2016, PERB entered its Decision and Order, articulating its findings of fact, concluding that Schrader-Cooke was not a regular employee of the Government of the Virgin Islands as defined by 3 V.I.C. § 530(a)(2)(C), and therefore, that PERB lacked jurisdiction over the appeal of her suspension. Motion, ex. 6. Schrader-Cooke did not seek judicial review of the PERB Decision and Order by appeal to the Superior Court as authorized by 3 V.I.C § 530a.

¶ 5      On March 23, 2016, Moorhead appeared on the local radio talk show *In Session*, hosted by her nephew, Robert Moorhead, and made statements about BOE and Plaintiff. Schrader-Cooke alleges that Moorhead stated that Plaintiff: "engaged in a 'breach of trust and violation of her authority;'" "approved a request for a change of classification for the Business and Finance Director from exempt to classified;" "engaged in 'unethical actions' and 'unethical business actions;'" "improperly cancelling the contract of the regular cleaning company and tried to hire its employee;" "was 'using the Board as her personal subsidy,' (such activity would constitute a crime

under 14 V.I.C. § 895)."[1] In her Answer, Moorhead neither admitted nor denied the allegations of defamation, stating that she "is without sufficient information or knowledge to either admit or deny the allegations in this Paragraph of the First Amended Complaint." (Moorhead Answer ¶ 88). Therefore, according to V.I. R. Civ. P 8 (b) (6),[2] those allegations are deemed admitted.

¶ 6    On April 1, 2016, the Board determined at executive session to terminate Plaintiff from the position of Acting Executive Director/Associate Executive Director effective April 4, 2016. The Board advised Schrader-Cooke of its action by letter of its Chair, stating in part that dismissal was necessary because she had taken actions in direct opposition to the decisions made by the Board, against the interests of the Board, and that her performance had been less than satisfactory. Motion, ex. 7.

¶ 7    On or about November 7, 2016, Plaintiff filed her initial Complaint with the Superior Court alleging breach of contract, breach of good faith and fair dealing, intentional interference with contractual relations and discrimination, and sought declaratory relief that the Board's termination violated her statutory and due process rights. On May 23, 2017, the Court permitted the filing of Plaintiff's First Amended Complaint (FAC), deemed filed February 28, 2017. By the FAC, Schrader-Cooke alleged: (1) violation of due process as to all Defendants; (2) breach of contract as to the Government, BOE and five Board member Defendants in their official capacity; (3) breach of good faith and fair dealing as to the Board member Defendants; (4) intentional interference with contractual relations as to Defendant Moorhead; (5) intentional interference with contractual relations as to Defendant Gomez; (6) defamation and slander as to Defendant Moorhead; and (7) negligence per se in violation of 24 V.I.C. § 451(a) as to all Defendants.[3]

## STANDARD OF REVIEW

¶ 8    In evaluating a motion for summary judgment, the Court must determine whether there exists a genuine dispute of material fact; one that would impact the outcome of the case under

---

[1] The summary judgment record includes no transcript or recording or other proof by Plaintiff of the words allegedly spoken by Moorhead. Rather, the alleged defamatory statements are as set out in Plaintiff's First Amended Complaint (¶ 88), deemed admitted by Moorhead.

[2] "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied. If a responsive pleading is not required, an allegation is considered denied or avoided." V.I.R. Civ. P. 8 (b)(6).

[3] Although titled "negligence per se," the substance of Plaintiff's Count VII claim that controls this review does not allege negligence, but rather retaliatory discharge in violation of the statutory provision.

applicable law. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379-80 (V.I. 2014) (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)). Such a dispute is genuine if a reasonable trier of fact could determine that particular factual issue material to the claim presented in favor of the non-moving party. *Id.* at 391-92. "Summary judgment is a drastic remedy [and] should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact," and that judgment is appropriate as a matter of law. *Id.* at 379-80.

¶ 9     Reviewing a motion for summary judgment, the trial court does not weigh the credibility of the evidence offered. Instead, all inferences from the evidence are drawn in favor of the nonmoving party, and any conflicting allegations, if properly supported by the record, are resolved in favor of the nonmovant. *See Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013) (citing *Williams*, 50 V.I. at 194-95). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Martin v. Martin*, 54 V.I. 379, 389 (V.I. 2010). If the "moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Id.* at 391 (citation omitted). If the moving party does carry its initial burden to produce evidence of the absence of material facts in dispute, then "the burden shifts to the non-moving party to present 'affirmative evidence' from which a jury might reasonably return a verdict in his favor." *Chapman v. Cornwall*, 58 V.I. 431, 436 (V.I. 2013) (citations omitted). In responding to the movant's evidence showing the existence of no genuine issue of material fact, "the nonmoving party may not rest on its allegations alone, but must present actual evidence, amounting to more than a scintilla, showing a genuine issue for trial," regarding such disputed fact. *Perez*, 59 V.I. at 527-28.

¶ 10     "A party asserting that a fact... is genuinely disputed must... support the assertion by: (i) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (ii) showing that the materials cited do not establish the absence... of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." V.I. R. Civ. P. 56(c)(1). Although the facts are to be interpreted in the light most favorable to the nonmoving party, the nonmoving party "may

not rest upon mere allegations and must present actual evidence showing genuine issue for trial." *Machado*, 61 V.I. at 379.

¶ 11 To determine whether summary judgment is appropriate, the Court must determine the substantive law governing the cause of action. *See Perez*, 59 V.I. at 528. The Government Defendants seek summary judgment on each of Schrader-Cooke's claims, which are addressed in turn. The Moorhead Motion is addressed in Count VI.

## DISCUSSION

### Count I – Violation of Due Process (All Defendants)

¶ 12 Plaintiff claims that she "had a property right in her job and was deprived of that right when she was terminated without an opportunity to be heard. Plaintiff's rights to due process, with their origins in both the Employee Handbook and the Fourteenth Amendment, were violated when the Board failed to provide her an opportunity to be heard after her notice of termination was received." FAC ¶ 56.

¶ 13 "For [] a procedural due process claim to succeed a plaintiff must establish that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him did not provide due process of law." *Fleming v. Cruz*, 62 V.I. 702, 713 (V.I. 2015) (citing *Iles v. deJongh*, 55 V.I. 1251, 1257 (3d Cir. 2011). "There is no constitutional guarantee of an established right to continued employment." *Id.* (citing *McKinney v. Pate*, 20 F.3d 1550, 1560 (11th Cir. 1994) (*en banc*) ("Supreme Court precedent demonstrates that an employee with a property right in employment is protected only by the procedural component of the Due Process Clause, not its substantive component. Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection."). *Id.* (citing *Board of Regent of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) ("Property interests, of course, are not created by the Constitution.")). "Further, there is no substantive due process interest in continued employment." *Id.* (citing *Wrench Transportation Systems, Inc. v. Bradley*, 340 Fed. Appx. 812, 815 (3d. Cir. 2009)).

¶ 14 Therefore, to succeed on a claim alleging a violation of procedural due process rights to continued employment, Schrader-Cooke must prove that she had a property right in continued

employment in the position from which she was terminated. *Id.* (citing *Wilson v. MVM, Inc.*, 475 F.3d 166, 177 (3d Cir. 2007)). She "cannot rely on her 'unilateral expectation of continued employment' but must show she had a 'legitimate entitlement to such continued employment.'" *Smith v. V.I. Hous. Auth.*, 2011 U.S. Dist. LEXIS 19409, at \*12-13 (D.V.I. 2011) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 234-35 (3d Cir. 2006) (quoting *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005)). "Such entitlement is shown where the employee cannot be removed except for cause." *Id.* (citing *Richardson v. Felix*, 856 F.2d 505, 510 (3d Cir. 1988) ("The hallmark of a constitutionally protected property interest is an individual entitlement that cannot be removed except 'for cause.'") (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)). "To determine whether there is a valid property interest at stake, the Court looks to 'sources such as state law and implied or express contracts.'" *Id.* (citing *Miller v. Township of Readington*, 39 Fed. Appx. 774, 775-76 (3d Cir. 2002) (citing *Roth*, 408 U.S. at 577-78)); *see also Baumann v. Pub. Emps. Relations Bd.*, 68 V.I. 304, 353 (V.I. Super. 2018) ("property rights in public employment are provided either by contract or by statute.").

¶ 15    In the Virgin Islands, it is well established that a regular government employee has a property interest in her continued employment. *Iles v. deJongh*, 55 V.I. at 1261. "A 'regular' employee… is a nonexempt employee who by statute is entitled to procedural protections prior to termination." *Smith*, 2011 U.S. Dist. LEXIS, at \*14 (citing *Smith v. Virgin Islands Port Authority*, 46 V.I. 466 (D.V.I. 2005) (citing *Richardson v. Felix*, 856 F.2d 505, 509 (3d Cir. 1988)).

¶ 16    Whether Schrader-Cooke is a "regular" employee is determined with reference to 3 V.I.C. §530. Public employees are either (1) career service (i.e. a regular employee) or (2) exempt service employees.[4] "An employee is in the career service unless the employee holds an exempt position described in 3 V.I.C. § 451a (b)(1)-(8). … The exempt designation is important because employees in that category can be terminated without cause. Employees who are not exempt are then considered career service employees. The career service category is further divided by § 451 into two subcategories: employees who are regular and those who are not regular, respectively… [U]nder the employee termination procedures of § 530, employees who are regular employees may be terminated only for cause, thus granting them a property interest in continued employment. …

---

[4] Career service is synonymous with classified service employee. Exempt service is synonymous with unclassified employee. 3 V.I.C §451a(d).

[N]ot all career service employees have due process protection, but rather, only those who also meet the definition of regular employees." *Baumann v. Pub. Emps. Relations Bd.*, 68 V.I. at 319. "To be a regular employee and thus gain a property interest in employment, an employee must have been appointed to a position in the career service in accordance with this chapter after completing his working test period."[5] *Id.*

¶ 17 On February 12, 2016, Schrader-Cooke appealed her suspension to PERB, arguing that she was a classified career and regular service employee. PERB's Decision and Order rejected Schrader-Cooke's appeal, concluding that she was not a regular employee as defined by 3 V.I.C. § 530 and that it therefore lacked jurisdiction over the appeal. PERB found that Schrader-Cooke was responsible for day-to-day operations of BOE, managed its staff, and was under the direction of the BOE Chair; and, therefore that Schrader-Cooke was a "head officer" as defined in V.I.C. § 530(a)(2)(A).[6] "Appellant, as the Acting Executive Director, is in a position of a policy-determining nature, and her position is in a confidential relationship with a policy-making official - the Board. And, as such, based on the record as a whole, it clearly shows that Appellant's position is in the exempt services. *See* 3 V.I.C. § 451a(b)(1) & (8)." Motion, ex.6.

¶ 18 In *Iles v. de Jongh,* the Third Circuit cited the 2000 and 2010 amendments to Title 3, adding the requirement that, for a position to be exempt under 3 V.I.C. § 451a(b)(8), it must not only be of a policy determining nature, but also be "designated by the Governor and submitted to the Legislature." 3 V.I.C. § 451a(b)(8). The appellate court found the plaintiffs' positions, both public employees in the Department of Planning and Natural Resources, had not been submitted to the Legislature, and therefore that neither plaintiff occupied an exempt position. Here, PERB's Decision and Order does not address whether Schrader-Cooke's position had been designated by the Governor and submitted to the Legislature.

---

[5] "This chapter refers to Title 3, Chapter 25 of the Virgin Islands Code, which in addition to §§ 451 and 451a, also includes Sections 521 through 535. These sections set forth the standards and requirements for tests, appointments, promotions, and dismissals of regular public employees. Under Section 521, to have been appointed to a position in the career service in accordance with this chapter requires that an employee have been appointed on the basis of merit and fitness, to be ascertained by competitive examinations." *Baumann*, 68 V.I. at 319 (citing *Iles v. de Jongh*, 55 V.I. at 1257-59, 1261.

[6] A "Head Officer" is the commissioner of an executive branch department, the director of an executive branch agency or instrumentality or the director, executive director, chief executive officer, president or other titular head of an instrumentality of the Government of the Virgin Islands. 3 V.I.C. § 530(a)(2)(A).

¶ 19    By statute, Schrader-Cooke had the right to appeal the PERB's Decision and Order. "Any party aggrieved by any final order of the PERB issued under section 530 or 531 of this chapter, may appeal to the Superior Court of the Virgin Islands. An application for review must be filed within 30 days of the date of the Final Order and name the PERB as a party respondent." 3 V.I.C. § 530a.[7] Schrader-Cooke did not file an appeal of PERB's Decision and Order to the Superior Court within 30 days, but rather filed her original Complaint in this action some eight months later. The Government Defendants argue that the present claim is barred by the doctrine of collateral estoppel, as the issue of Schrader-Cooke's exempt employment classification has previously been litigated to a final determination.

¶ 20    The Virgin Islands Supreme Court conducted a *Banks* analysis to determine that "to bar relitigation of an issue under the doctrine of collateral estoppel, an asserting party must demonstrate: (1) the issue to be barred is identical to an issue actually and necessarily decided in the prior action;[8] (2) the prior action was adjudicated in a decision that was final, valid, and on the merits; (3) the party against whom the doctrine is asserted was a party or in privity with a party to the prior action; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior action." *Stewart v. V.I. Bd. of Land Use Appeals*, 66 V.I. 522, 549-50 (V.I. 2017) (internal quotes and citations omitted).

¶ 21    Here: (1) the issue whether Schrader-Cooke was a regular or exempt employee was actually and necessarily decided by PERB. PERB's thorough analysis of Schrader-Cooke's employment classification provided the sole basis for the determination that PERB did not have jurisdiction over Schrader-Cooke's claims. (2) The adjudication of the prior action was a final and valid

---

[7] "[P]rior to section 530a's enactment in 2002, Virgin Islands courts consistently held that aggrieved parties could only obtain review of orders entered by PERB and its predecessor, the Government Employees' Service Commission, through the general writ of review statute, codified as 5 V.I.C. §§ 1421-23." *Gov't of the V.I. v. Crooke*, 54 V.I. 237, 247-48 (V.I. 2010).

[8] "Both doctrines [*res judicata* and collateral estoppel] apply not only to judicial determinations, but also to administrative decisions, where the agency acts in a quasi-judicial capacity." *Baumann v. Pub. Emps. Relations Bd.*, 68 V.I. at 339 (citing *Dep't of Corrections v. Tucker*, 657 A.2d 546, 549 (R.I.1995)); *see also* RESTATEMENT (SECOND) OF JUDGMENTS § 83 (1982) ("[A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules *of res judicata* ... as a judgment of a court.") *Id.*

decision on the merits as to Schrader-Cooke's employment status.[9] (3) Schrader-Cooke, the party against whom collateral estoppel is asserted was a party to the prior action; where (4) she was represented by counsel, an evidentiary hearing was conducted, Schrader-Cooke had a full fair opportunity to litigate the issue of her employment status before the PERB.

¶ 22    As such, because Plaintiff's claim that she was a regular employee of the Government of the Virgin Islands was fully adjudicated by PERB which determined that Schrader-Cooke was an exempt employee, such that she had no property interest in her continued employment, her claim that she was deprived of due process is barred as a matter of law, by collateral estoppel, and the Motion will be granted as to Count I.

## Count II - Breach of Contract (Gov't, Board, Board Members in Official Capacity)

¶ 23    To prevail on a claim of breach of contract under Virgin Islands law, a plaintiff must establish: (1) the existence of a contract between the parties; (2) that the defendant breached a material duty imposed by that contract; and (3) that damages resulted from the breach. *George v. V.I. Lottery Comm'n*, 54 V.I. 533, 539 (V.I. 2010). By their Motion, Government Defendants claim that there is no genuine issue of material fact in dispute and that, as a matter of law, no employment contract existed between Plaintiff and Defendants. To survive summary judgment, Plaintiff must present evidence by which a reasonable trier of fact could find in her favor as to the existence of a contract and each element of her breach of contract claim.

¶ 24    To show the existence of a contract between Plaintiff and BOE, Schrader-Cooke offers a copy of her Voluntary Acceptance of Exempt (Unclassified) Position as Associate Director of BOE, dated June 22, 2015 (Motion, ex. 3); BOE's June 25, 2015 letter to OMB (Motion, ex. 1); and the fully executed NOPA, finalized August 3, 2015 (Motion, ex 4).

¶ 25    The PERB Decision and Order established that Plaintiff was an exempt employee of the Virgin Islands pursuant to 3 V.I.C. §451a(b)(1) and (8). As an exempt employee, Schrader-Cooke's employment relationship is deemed to have been at-will. "In the case of an employment-

---

[9] PERB's Decision and Order determined that PERB did not have jurisdiction and therefore it "decline[d] to reach the full merits of the matter," that is, the disciplinary action BOE took against Schrader-Cooke. Motion, ex. 6, at 11. However, the matter in issue here, Schrader-Cooke's employment status, was determined on the merits as to that issue.

at-will contract, it may be said that the parties have agreed, for example, that the employee will do the work required by the employer and that the employer will provide the necessary working conditions and pay the employee for work done. What cannot be said is that one of the agreed benefits to the at-will employee is a guarantee of continued employment or tenure. The very nature of the at-will agreement precludes any claim for a prospective benefit." *Canton v. V.I. Humanities Council*, 2017 V.I. LEXIS 116, at *22 (V.I. Super. 2017).

¶ 26    The Superior Court has recently analyzed the character of an at-will employment relationship with regard to permitted expectations of the parties:

> At-will employment means an employer or employee can terminate their employment relationship at any time and for any reason not prohibited by statute or for no reason at all. Therefore, neither party has the right to the continuation of the employment relationship. However, like other terms of an employment agreement, parties can agree to modify an employment relationship's at-will status, such as by promising only to terminate the relationship for just cause.

*Espersen v. Sugar Bay Club & Resort Corp.*, 2018 V.I. LEXIS 68, at *26 (V.I. Super. 2018).

¶ 27    Here, as an exempt employee, unless modified by agreement of the parties, Schrader-Cooke's at-will employment status conferred on her no contractual interest in or right to continued employment.

¶ 28    Viewing the summary judgment record and the law in the light most favorable to Schrader-Cooke as the non-moving party, it is necessary to consider whether the parties agreed to modify their relationship to incorporate the progressive discipline regime mandated by the Virgin Islands Government Employee handbook. "Under Virgin Islands law, the existence of an employee handbook or manual along with evidence that the employer intended to be bound by its terms can establish an implied contract in the case of an at will employee." *Smith v. V.I. Hous. Auth.*, 2011 U.S. Dist. LEXIS 19409, at *15 (citations omitted); *see also Haase v. Government of the Virgin Islands*, 2008 U.S. Dist. LEXIS 118871, at *5 (D.V.I. 2008) (noting that a public sector at will employment relationship "can be subject to express and implied contractual restraints"). "An implied contract, in turn, may be sufficient to create a property interest in employment." *Id.* (citing *Bishop v. Wood*, 426 U.S. 341, 344 (1976)).

¶ 29    Therefore, for this claim to survive summary judgment, Schrader-Cooke must present "evidence that the employer intended to be bound by its terms" in order to establish an implied contract binding the parties to the progressive disciplinary scheme set out in the handbook. To do

so, Plaintiff presents evidence that when BOE suspended Plaintiff by letter of February 5, 2016, the Board followed the employee protection duties in Section 500:6 of the Government Employees handbook. Section 500: 6, entitled SUSPENSION, states:

> When a supervisor recommends the termination of an employee a letter of termination, signed by the department head, will be sent to the employee. The letter will state a description of the problem, the effective date of the termination and the employee's right to a hearing.

¶ 30    The Board's February 5, 2016 letter gave Schrader-Cooke notice of her right to appeal the suspension: "Since you are exempt, you require no notice regarding an appeal of this decision. Out of an abundance of caution, however, you are hereby notified that you have a right to request a hearing before the Public Employee Relations Board..." Motion, ex. 5. The letter did not advise Schrader-Cooke that she had the "right to a hearing" before the Board according to the language of the Government Employees handbook. Rather, the letter specifically advised Schrader-Cooke of her right to appeal to PERB, in accordance with 5 V.I.C. §530, which was quoted in the letter. The letter advised Schrader-Cooke of statutory rights and made no reference to the Government Employees handbook or its provisions. Plaintiff has pointed to nothing in the record evidencing an intent of the Board to be bound by the Government Employees handbook regarding employee discipline or otherwise.

¶ 31    Absent any proof in the record, there is no evidence from which a reasonable juror could find the existence of an implied contract between Plaintiff and BOE incorporating the terms of Government Employees handbook. Plaintiff has also presented no evidence to prove a contractual relationship with any Defendant Board member individually. Accordingly, as a matter of law, BOE and the individual Board members are entitled to summary judgment on Count II.

**Count III - Breach of Good Faith and Fair Dealing (Board Members in Official Capacity)**

¶ 32    "The steady trend of case law and statutes has been to apply the duty of good faith and fair dealing to employment contracts terminable at will. *See, e.g., Lucas v. Brown & Root, Inc.*, 736 F.2d 1202, 1204 (8th Cir. 1984); *Bruffett v. Warner Communications, Inc.*, 692 F.2d 910, 918 (3d Cir. 1982); *See also Petersen v. First Fed. Sav. & Loan Ass'n*, 17 F. Supp. 1039, 1042, 21 V.I. 429 (D.V.I. 1985) (confirming employee's right to recover for breach of good faith and fair dealing with respect to employment contract and termination). In *Government of the Virgin Islands v.*

*Davis*, 2001 U.S. Dist. LEXIS 20191, at *12 (D.V.I. 2001), the court held that an implied contract between an at-will employee and his employer includes an implied obligation of good faith and fair dealing." *Williams v. V.I. Hous. Auth.*, 2007 U.S. Dist. LEXIS 98197, at *11 (D.V.I. 2007) (citing RESTATEMENT (SECOND) OF CONTRACTS § 205).

¶ 33    The Court adopts the reasoning and determination of the Superior Court's recent thorough *Banks* analysis concluding that the best rule for the Virgin Islands is to confirm that an implied duty of good faith and fair dealing exists in at-will employment contracts. However, "that implied duty only protects an employee's reasonable expectations stemming from the employment contract, i.e. payment earned from labor provided. An at-will employee does not have a reasonable expectation of continued employment or just cause termination." *Canton v. V.I. Humanities Council*, 2017 V.I. LEXIS 116, at *24. Accordingly, Plaintiff cannot prevail on any claim that Defendants failed to act in good faith in terminating her, as "the implied duty does not impose an obligation upon employers to terminate employees only for just cause." *Id.*

¶ 34    In this action, Plaintiff has not claimed and has presented no evidence that Defendants deprived her from receiving her "retrospective right to an earned benefit, as opposed to any possible prospective damages, such as back pay." *Id.* Rather, by her First Amended Complaint with regard to her allegations of "Defendants bad faith actions," Schrader-Cooke claims that she "lost her job and the income that came with it" and that she "is entitled to lost wages and all other expected benefits of her employment." FAC ¶¶ 74-75.

¶ 35    As set forth above, the Court has determined that an at-will contract existed between Plaintiff and BOE, imposing duties of good faith and fair dealing, which do not include a duty on the employer to terminate its employee only for good cause, and do not give rise to an expectation by the employee of continued employment and income. Here, Schrader-Cooke claims that she is entitled to damages because she was terminated "in bad faith." FAC ¶ 72. She does not claim to have been deprived of any retrospective right to earned benefits, but rather seeks prospective damages in the form of lost wages and employment benefits. Because the duty of good faith and fair dealing in an at-will employment contract does not give rise to an employee's expectation of continued employment or to prospective damages, Schrader-Cooke cannot prevail on this count and summary judgment will enter in favor of Defendants.

**Counts IV and V - Intentional Interference with Contractual Relations (Moorhead and Gomez, Individually)**

¶ 36    In 2015, the Superior Court conducted a *Banks* analysis to determine the soundest rule for the Virgin Islands and recognized the viability of a claim of intentional interference with existing contractual relations in a case that has been repeatedly cited and followed since: *Donastorg v. Daily News Publishing Co., Inc.*, 63 V.I. 196, 286 (V.I. Super. 2015). The Superior Court concluded that in order to prevail on a claim for intentional interference with existing contractual relations, a plaintiff must demonstrate the existence of a specific contract with a third party, that the defendant knew of that contract, and that the defendant intentionally interfered with that contract. *Id.* The analysis and conclusion are adopted and applied here.

¶ 37    Plaintiff alleges that Gomez and Moorhead, in their individual capacities, interfered with her contract with the Board, the very Board on which Gomez and Moorhead sit as elected members.[10] Schrader-Cooke claims that Gomez and Moorhead tortiously interfered with her contractual relationship with BOE. The Superior Court case of *Mills-Williams v. Mapp* is instructive with regard to this claim. 2016 V.I. LEXIS 238 (V.I. Super. 2016).[11]

¶ 38    In *Mills-Williams*, the plaintiff former Virgin Islands Government employee presented allegations that the Court determined "likely qualify as contract interference," with regard to her transfer to another department; being placed on leave with pay; being placed on leave without pay; and, ultimately, being terminated from employment altogether. "The common thread here is that in every instance, the facts as alleged involve a Defendant or proposed Defendant taking action in their capacity as an agent of Mills-Williams's employer, the Government of the Virgin Islands. Indeed, it is impossible for anyone except an agent of the government to effect a transfer, put an employee on leave, deny her pay, and fire her." 2016 V.I. LEXIS 238, at *21-22. Because the alleged interference related to a contractual relationship between the plaintiff and agents of her employer, "Mills-Williams has not shown that she had a third-party contract in which Defendants meddled — Defendants, as government agents, are the third party." *Id. See also Sorber v. Glacial*

---

[10] Indeed, by her First Amended Complaint, Schrader-Cooke alleges that "the Government, the Board, and each of the Defendants were the Plaintiff's employers." FAC ¶ 109.

[11] On appeal to the Supreme Court, Mills-Williams waived the issue of the trial court's dismissal of her allegations of the defendants' tortious interference with her employment contract. *See Mills-Williams v. Mapp*, 67 V.I. 574, 586, n.7 (V.I. 2017).

*Energy VI, LLC,* 2013 V.I. LEXIS 69, at \*14-15 (V.I. Super. 2013) (confirming that a person or corporation cannot tortiously interfere with its own contract, and that the plaintiff's termination by the defendant, agent of her employer, could not give rise to a claim for tortious interference).

¶ 39     All of Plaintiff's allegations against Moorhead (Count IV) and against Gomez (Count V) relate to activities they engaged in as Board members, exclusively relating to communications with Board members, allegedly undermining Schrader-Cooke's authority on the job. FAC ¶¶ 78, 83. By her Opposition, filed June 18, 2019, Schrader-Cooke sought to clarify this claim, stating that she "has alleged that the Defendants voted to terminate Plaintiff, and that voting action is what influenced her employer, the Government, to end her employment contract." Opposition, at 6. Communications among Board members and engaging in votes relative to BOE personnel are clearly activities that comprise a part of the duties of Board members. As with *Mills-Williams*, the actions complained of were taken by Moorhead and Gomez as agents of Schrader-Cooke's employer, the BOE of the Government of the Virgin Islands. Indeed, it would be impossible for anyone except agents of Plaintiff's employer to take action to terminate that employment.

¶ 40     Schrader-Cooke characterizes her claims against Moorhead and Gomez as against them both as Board members and in their individual capacities. As noted, all actions of which Plaintiff complains relate to these Defendants' roles as elected BOE members. "Nor will it do for Mills-Williams to argue that she named Defendants in both official and personal capacities. The facts as pleaded, and not the labels applied, are what matter, *Joseph*, 54 V.I. at 650, and the facts as pleaded do not plausibly show any interference from Defendants acting outside the scope of their employment." *Mills-Williams v. Mapp*, 2016 V.I. LEXIS 238, at \*22.

¶ 41     Schrader-Cooke has not shown the existence of a contract with a third-party with which these Defendants interfered. Rather, "Defendants, as government agents, are the third party." *Id.* As such, as a matter of law, Schrader-Cooke cannot establish liability against Moorhead or Gomez for intentional interference with a third-party contract, and summary judgment will be granted as to Count IV and Count V.

**Count VI - Defamation (Moorhead)**

¶ 42     The Supreme Court has adopted the basic elements for a claim of defamation set forth in RESTATEMENT (SECOND) OF TORTS § 558. *Joseph v. Daily News Publ'g Co., Inc.*, 57 V.I. 566,

585-86 (V.I. 2012), affirming post-*Banks*, the Court's earlier decision in *Kendall v. Daily News Pub. Co.*, 55 V.I. 781, 787 (V.I. 2011).[12] Those elements are:

    (a) a false and defamatory statement concerning another;
    (b) an unprivileged publication to a third party;
    (c) fault amounting at least to negligence on the part of the publisher; and
    (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Those elements are each addressed.

### (a) A false and defamatory statement concerning another.

¶ 43    As to the first element, the truth or falsity of a statement is generally a question of fact for the jury, and a statement or communication is only defamatory if "it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Joseph*, 57 V.I. at 586 (citing RESTATEMENT (SECOND) OF TORTS § 559).

¶ 44    On March 23, 2016, Mary Moorhead appeared on the local radio talk show *In Session*, hosted by her nephew Robert Moorhead. Schrader-Cooke alleges that on the broadcast, Moorhead accused Plaintiff of engaging in a "breach of trust and violation of her authority;" of approving a request for a change of classification for the Business and Finance Director from exempt to classified; of engaging in "unethical actions" and "unethical business actions;" of improperly cancelling the contract of the regular cleaning company to try to hire its employee; and of "using the Board as her personal subsidy," (activity Plaintiff alleges would constitute a crime under 14 V.I.C. § 895). FAC ¶ 88. Beyond these allegations of the First Amended Complaint, the summary judgment record is devoid of any evidence of Moorhead's allegedly defamatory words. Neither side has presented a transcript or recording of the radio broadcast or otherwise set forth the

---

[12] *Kendall* applied the Restatement pursuant to 1 V.I.C. § 4, prior to the Supreme Court's determination that the Legislature's adoption of 4 V.I.C. § 21 establishing the Supreme Court as the supreme judicial authority in the Virgin Islands implicitly repealed 1 V.I.C. § 4 such that courts of the Virgin Islands were able to determine the common law without automatically and mechanistically following the Restatements. *Joseph* analyzed the elements of defamation in light of its ruling in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), and applied the three non-dispositive *Banks* factors and found "no reason to depart from our decision in *Kendall* to follow the approach set forth in the Second Restatement." *Joseph*, 57 V.I. at 585-86, n.10.

substance of the alleged defamatory language.

¶ 45    Defendant Moorhead has not denied the allegations of the FAC as to her purported statements, rather stating in her Answer that each allegation is neither admitted nor denied. As such, each is deemed admitted pursuant to V.I. R. Civ. P. 8(b)(6).[13] Moorhead contends that she acted in her official capacity at all times, that all statements were true to the best of her knowledge, and that the statements constituted her opinions and legal characterization of facts established by evidence adduced at the April 12, 2016 BOE meeting and from legal advice from the Board's counsel. Joint Final Pretrial Order, at 7-8. Nonetheless, whether or not the statements made on the radio were true or false is "generally a question of fact for the jury." *Joseph*, 57 V.I. at 586.

¶ 46    "Under the First Amendment there is no such thing as a false idea." *Kendall*, 55 V.I. at 796 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974)). "Thus, only statements that are 'provable as false' are actionable, and expressions of opinion or hyperbole, not provable as false, are constitutionally protected." *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-20 (1990)).

¶ 47    The question "[w]hether an allegedly defamatory statement is one of opinion or fact is [] a question of law...." *Simpson v. Andrew L. Capdeville, P.C.*, 64 V.I. 477, 486 (V.I. 2016) (citations omitted). As such, the Court must determine whether the alleged defamatory statements broadcast on the radio talk show were statements of opinion or fact. In the absence of proof of the words uttered by Moorhead, this review is limited to and based upon the allegations of the FAC deemed admitted.

¶ 48    Moorhead's claim that Schrader-Cooke engaged in a "breach of trust and violation of her authority" is an expression of opinion unless fleshed out by specific allegations of actions constituting such breach and violation, since such a charge untethered to particular alleged acts cannot be proven to be false.

¶ 49    Moorhead's claim that Plaintiff approved a request for a change of employment classification of the Business and Finance Director from exempt to classified is a statement of fact, although on its face not defamatory as it is not apparent how such a statement could tend to harm Schrader-Cooke's reputation as to lower her in the estimation of the community or to deter third

---

[13] *See* ¶ 5 and n.2, *supra.*

persons from associating or dealing with her.

¶ 50    Moorhead's statement that Schrader-Cooke cancelled the contract of the regular cleaning company and tried to hire its employee are statements of fact, although her characterization of the cancellation as "improper" may be seen as an expression of opinion, and without a supporting factual context, it is unclear how such a comment can be deemed to be defamatory.

¶ 51    Defendant Moorhead's statement that Plaintiff engaged in "unethical actions" and "unethical business actions" are both opinions that cannot be proven as false without the factual underpinnings of particular unethical actions alleged.

¶ 52    Moorhead's statement that Schrader-Cooke was "using the Board as her personal subsidy" is a statement of fact, and its truth or falsity is a question of fact for the jury, as well as to whether such statement is defamatory. Plaintiff's claim that the statement accused her of committing a crime under 14 V.I.C. § 895 is a legal question to be addressed at trial, together with resulting legal implications.

### (b) An unprivileged publication to a third party.

¶ 53    "'Publication' means the 'communication intentionally or by negligent act to one other than the person defamed.'" *Joseph*, 57 V.I. at 586 (citing RESTATEMENT (SECOND) OF TORTS § 557). "The term 'unprivileged' refers to the alleged defamer's inability to demonstrate that he was in some way 'privileged' to make the defamatory communication." *Id.*

¶ 54    Moorhead has not disputed that her statements were broadcast on a local radio talk show, such that Plaintiff has produced evidence that the statements were in fact published. Moorhead asserts, however, that her communications, as a public official, were privileged. "The types of privilege defenses available fall into two categories, 'absolute privileges,' *see* RESTATEMENT (SECOND) OF TORTS §§ 583-592A, and 'conditional privileges,' *see* RESTATEMENT (SECOND) OF TORTS §§ 593-598. Privilege, however, can be abused in such a way as to subject to privileged defamer to liability despite his privilege. RESTATEMENT (SECOND) OF TORTS §§ 599-605A." *Id.*

¶ 55    Moorhead's communications cannot be protected by any of the absolute privileges listed in RESTATEMENT (SECOND) OF TORTS §§ 585-592A. Moorhead's counsel argued at the September 17, 2019 motions hearing that Moorhead had a "duty" to inform the public as to Schrader-Cooke's alleged actions in light of her position on the Board. Moorhead's Motion cites a non-specific

statute[14] which imposes no duty on BOE officers or members to inform the public of its affairs. Moorhead cites no other statute or basis which grants Moorhead an absolute privilege. However, Section 598A provides conditional privileges for "inferior administrative officers of a state or any of its subdivisions,"[15] as follows:

> An occasion makes a publication conditionally privileged if an inferior administrative officer of a state or any of its subdivisions who is not entitled to an absolute privilege makes a defamatory communication required or permitted in the performance of his official duties.

¶ 56    Moorhead's claim of privilege includes her assertion that her responsibilities as BOE chair include keeping the public informed concerning the affairs of the Board. Whether the performance of her responsibilities requires her to present such information on a broadcast radio talk show is questionable, but such communication is most surely permitted in the performance of her duties. *See Policeman's Benevolent Association v. Richards*, 2017 V.I. LEXIS 18, at *6-7 (V.I. Super. 2017). If her communication can be seen to be conditionally privileged, it is necessary to determine whether Moorhead abused her privilege.

¶ 57    Notwithstanding the potential applicability of a conditional privilege, Moorhead might nonetheless be liable in the event that she is found to have abused that privilege. *See* RESTATEMENT (SECOND) OF TORTS § 599. A person who publishes false and defamatory matter upon an occasion giving rise to a conditional privilege abuses the privilege if she:

> (a) knows the matter to be false, or
> (b) acts in reckless disregard as to its truth or falsity. RESTATEMENT (SECOND) OF TORTS § 600.

¶ 58    While the applicability of a conditional privilege may be a question of law, in addition to the initial question as to whether the matter published is true or false, questions of whether a defendant knew the matter to be false, or acted in reckless disregard to its truth or falsity, are

---

[14] 17 V.I.C. §21. Power and Duties of the Board. "The Board is responsible for the general policy and direction of education in the Virgin Islands. This board authority shall be exercised in accordance with the Federal Constitution, the Revised Organic Act, Virgin Islands laws, and regulations. The board may execute any powers delegated by law to it and shall discharge any duty imposed by law upon it."

[15] "The conditional privilege stated in this Section is to be contrasted with the absolute privilege stated in § 591. The absolute privilege applies to any executive or administrative officer of the United States, to a superior executive officer of a State and, in some States, to executive officers of lesser rank. This privilege applies to all other executive and administrative officers of a State or of any of its subdivisions." RESTATEMENT (SECOND) OF TORTS § 598A, cmt. c.

questions of fact. As such, the question whether Defendant Moorhead abused any conditional privilege that may apply to her published communication is a question of fact for a trial jury.

### (c) Fault amounting at least to negligence on the part of the publisher.

¶ 59    "The third element can generally be described as 'fault.' The level of fault varies with the parties to the defamation action, but the Restatement employs the minimum standard in its general definition of defamation.... It is the element of fault that is given a higher threshold when the defendant is a public official or public figure and the defamatory statements reference matters of public concern...." *Joseph*, 57 V.I. at 586-87. Similarly, a higher standard of "fault" is required where the communication relates to a public official. "Specifically, 'one who publishes a false and defamatory communication concerning a public official or public figure in regard to his conduct, fitness or role in that capacity is subject to liability if, but only if, he (a) knows that the statement is false and that it defames the other person, or (b) acts with reckless disregard of these matters.' RESTATEMENT (SECOND) OF TORTS § 580A). This disjunctive standard has been dubbed the 'actual malice' standard by the United States Supreme Court. RESTATEMENT (SECOND) OF TORTS § 580A, cmt. d." *Id.* at 588.

¶ 60    Because both Schrader-Cooke and Moorhead are public officials in this context, liability may attach only if the publication was made with "actual malice." A finding of actual malice is proper if the factfinder determines that the one publishing the defamatory statement was actually aware that it was false and defamatory. Alternatively, if the publisher may liable if she recklessly disregarded whether the communication was false and defamatory.

> A 'reckless disregard' for the truth ... requires more than a departure from reasonably prudent person conduct. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication. The standard is a subjective one — there must be sufficient evidence to permit the conclusion that the defendant actually had a high degree of awareness of probable falsity. As a result, failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard.

*Id.* (quoting *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 688 (1989) (internal quotation marks and citations omitted)).

¶ 61    As with the truth or falsity of the published statements, the determination of whether a defendant acted with actual malice is a question of fact to be determined at trial.

**(d) Actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.**

¶ 62 "The Restatement defines 'special harm' as 'the loss of something having economic or pecuniary value ... [which] must result from the conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation.' RESTATEMENT (SECOND) OF TORTS § 575, cmt. b." *Joseph*, 57 V.I. at 587. However, a plaintiff need not prove the existence of special harm in those categories of defamatory statements that are actionable on their face, or actionable *per se*. Among those categories of defamation that are actionable *per se* is the radio broadcast of a defamatory communication. "Broadcasting of defamatory matter by means of radio or television is libel, whether or not it is read from a manuscript." RESTATEMENT (SECOND) OF TORTS § 568A.

¶ 63 While defamation by slander requires as an element of proof the existence of special damages resulting from the defamatory statement,[16] such proof is not required in the case of libelous defamation. Because here it is undisputed that Moorhead's statements in issue were broadcast on a radio talk show, those statements, if determined to be defamatory, would constitute libel and be actionable *per se*, without the need that Schrader-Cooke prove special damages.[17]

¶ 64 Moorhead has admitted that she made statements as alleged in the First Amended Complaint broadcast on a radio talk show on March 23, 2016. Whether those statements that allege facts, as opposed to nonactionable opinions, were false, and whether they were defamatory are disputed questions of fact to be resolved at trial. Similarly, a jury issue is posed as to whether the statements were made by Moorhead with actual malice, without the need that Schrader-Cooke

---

[16] "Unlike other torts, this 'special harm' assessment is not itself a calculation of damages. It is actually an element of the tort, the satisfaction of which must be established for there to be liability. Only after that liability is established does an assessment of actual damages become relevant." *Joseph*, 57 V.I. at 587, n.11.

[17] Because a radio broadcast is a libel that is actionable *per se*, no analysis is conducted as to whether the alleged defamation here might be deemed actionable *per se* if slanderous rather than libelous. The classes of slander that are actionable *per se* are outlined in Restatement (Second) of Torts §§ 570-574:

One who publishes matter defamatory to another in such a manner as to make the publication a slander is subject to liability to the other although no special harm results if the publication imputes to the other

(a) a criminal offense, as stated in § 571, or
(b) a loathsome disease, as stated in § 572, or
(c) matter incompatible with his business, trade, profession, or office, as stated in § 573, or
(d) serious sexual misconduct, as stated in § 574."

RESTATEMENT (SECOND) OF TORTS § 570.

establish that she suffered special damages resulting from the broadcast communication. As such, Defendant Moorhead's Motion seeking summary judgment as to Plaintiff's claim for defamation against Moorhead in her individual capacity will be denied.

### Count VII - Intentional Infliction of Emotional Distress (Gomez, Slack, Hendricks, Moorhead, and Lockhart, in their Official Capacities and as Individuals)

¶ 65 "In order for a plaintiff's intentional infliction of emotional distress claim to survive a motion for summary judgment, a plaintiff must demonstrate genuine issues of material fact concerning whether a defendant: (1) intentionally or recklessly; (2) engaged in extreme and outrageous conduct that exceeds all possible bounds of decency such that it is regarded as atrocious and utterly intolerable in a civilized society; (3) that caused the plaintiff to suffer severe emotional distress." *Donastorg v. Daily News Publishing Co., Inc.*, 63 V.I. at 295.[18]

¶ 66 "To survive a motion for summary judgment on this Count, Plaintiff, as the non-movant, must demonstrate that the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community, such that the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Mina v. Hotel on the Cay Timesharing Ass'n,* 62 V.I. 220, 235 (V.I. Super. 2015), citing *Edwards v. Marriott Hotel Mgmt. Co. (V.I.), Inc.,* 2015 V.I. LEXIS 13, at *24 (V.I. Super. 2015), quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d. Plaintiff has failed to even allege, much less present any evidence, which meets such a stringent standard.

¶ 67 The suspension or termination of an exempt employee is not the type of outrageous conduct that could be deemed atrocious and utterly intolerable such that no reasonable person in a civilized society would be expected to endure it. In fact, such activity is legal and typical of an at-will employment relationship. "It is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Smith v. V.I. Housing Auth,* 2011 U.S. Dist. LEXIS

---

[18] The *Donastorg* Court adopted the *Banks* analysis conducted in *Joseph v. Sugar Bay Club & Resort*, 2014 V.I. LEXIS 14 (V.I. Super. 2014), *rev'd on other grounds*, 2015 V.I. Supreme LEXIS 4 (V.I. 2015), which determined that the principles set out in RESTATEMENT (SECOND) OF TORTS § 46 represented the soundest rule of law for the Virgin Islands.

19409, at \*24 (citing *Matczak v. Frankford Candy and Chocolate Co.*, 136 F.3d 933, 940 (3d Cir.1997)).

¶ 68 Further, Plaintiff has failed to present evidence to show that she has suffered severe emotional distress.[19] For these failures, Plaintiff's claim for intentional infliction of emotional distress cannot survive and the Motion will be granted and summary judgment entered on this claim as to the individual Defendants.

**Count VIII - Retaliation in Violation of 24 V.I.C. 451(a) (All Defendants)**

¶ 69 Plaintiff alleges that she verbally reported and warned the Board of violations of rules or regulations and that, as a result, "the Defendants retaliated against her with suspension and termination from the Plaintiff's position of employment," actions which she alleges "constituted violations of 24 V.I.C. § 451(a)." FAC ¶¶ 111, 113. Section 451(a) provides recourse for "any person who has been discriminated against." Schrader-Cooke does not allege that she has been discriminated against, but rather that she is the victim of retaliatory action with regard to her employment. As such, it appears that Plaintiff has cited the incorrect statutory basis for her claim and actually seeks relief pursuant to the provisions of 24 V.I.C. 451a(a), which provides that "[a]n employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee... reports or is about to report, verbally or in writing, a violation or a suspected violation of this chapter, regulation or rule promulgated pursuant to law of this territory or the United States to a public body...." 24 V.I.C. § 451a(a).

¶ 70 The statute further provides that "a person who alleges a violation of this section may bring a civil action for appropriate injunctive relief, or actual damages, or both, within ninety days after the occurrence of the alleged violation of the provisions of this section." 24 V.I.C. § 451a(b). Plaintiff's initial Complaint in this matter was filed November 7, 2016. The last alleged retaliatory action taken by Defendants occurred when Schrader-Cooke was terminated on April 4, 2016. FAC ¶ 50. To be timely, her claim of retaliation in violation of the statute had to be filed within 90 days thereafter, no later than July 4, 2016, and the Complaint as filed was untimely.

---

[19] Despite her claims that she "suffered mental anguish and severe emotional distress," the summary judgment record includes no evidence to substantiate these mere allegations. FAC ¶ 106.

¶ 71    The determination whether the statutory filing period is jurisdictional or only a claims-processing rule is to be discerned from the Legislature's intent as to whether the statutory language simply regulates the process of obtaining judicial review or intends to limit the court's adjudicatory authority. *Brooks v. Gov't of the Virgin Islands*, 58 V.I. 417, 426 (V.I. 2013).

¶ 72    Here, the statute provides that judicial review may be sought as an alternative to the administrative remedies available through a complaint filed with the Department of Labor (24 V.I.C. § 451a(b)). The statutory limitation period is discerned to be jurisdictional in that the Legislature intended to provide an opportunity to victims of employment-related retaliation to seek a judicial rather than administrative remedy but limited the court's adjudicative authority to those claims filed within 90 days of the alleged retaliation. Accordingly, because Plaintiff's Complaint was untimely, her statutory claims are barred.

¶ 73    Yet, even if the statutory limitation period were merely a claims-processing rule subject to waiver, none of the Defendants has waived the right to challenge the timeliness of Plaintiff's retaliatory discharge claim. The Answer of the Government Defendants to Plaintiff's FAC states that they "reserve all other affirmative defenses listed in F.R.C.P. [sic] 8(c)," which includes "statute of limitations." V.I. R. Civ. P. 8(c)(1) (identical to Fed. R. Civ. P. 8(c)(1)). Similarly, Defendant Moorhead's Answer to Plaintiff's FAC includes as Affirmative Defense 13: "Defendant hereby asserts all other affirmative defenses listed in F.R.C.P. [sic] 8(c)."

¶ 74    Because Plaintiff's statutory claim of employment retaliation was filed outside the time limitation set forth in 24 V.I.C. § 451a(b), that claim is time-barred, Defendants' Motion will be granted, and summary judgment will enter as to Count VIII.

## CONCLUSION

¶ 75    For the reasons outlined above, Government Defendants' Motion for Summary Judgment will be granted, and an Order is entered together herewith dismissing Count I, Count II, Count III, Count IV, Count V, Count VII and Count VIII of Plaintiff's First Amended Complaint. Defendant Moorhead's Motion to Dismiss will be denied by Order entered herewith.

DATED: December ⎽⎽ , 2019.

_____
DOUGLAS A. BRADY, JUDGE

ATTEST:

ESTRELLA H. GEORGE
Clerk of the Court

By: _____
     Court Clerk Supervisor